UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05-CV-36-H

CLARENCE OVERALL, JR.                                                                       PLAINTIFF

V.

SYKES HEALTH PLAN SERVICES, INC.                                                  DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Sykes Health Plan Services, Inc.'s ("SHPS") motion for summary judgment. Plaintiff Clarence Overall, Jr.'s claims breach of contract and fraud because SHPS allegedly mishandled his COBRA continuation medical insurance coverage. As a consequence, Plaintiff was without health insurance for periods when he incurred medical expenses. SHPS argues that it is entitled to summary judgment because Plaintiff's claims are preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"). Ultimately, this raises the question of whether ERISA preempts claims against non-fiduciaries for the recovery of lost ERISA benefits.

I.

SHPS provides benefit administrative services to large and medium sized employers throughout the country. One such employer was Park Place Entertainment Corporation ("Park Place"), Plaintiff's former employer. Effective January 1, 1999, SHPS entered into an Administrative Services Agreement (the "Agreement") with Park Place, under which SHPS

would administer COBRA continuation coverage under an employee welfare benefit plan (the "Plan") adopted and sponsored by Park Place within the meaning of ERISA. SHPS's duties under the Agreement included providing general billing services with respect to COBRA continuation coverage provided under the Plan and establishing, maintaining, and updating eligibility reports for the insurance carriers identified by Park Place. The Agreement expressly provided that payment of benefits under the Plan was the obligation of Park Place, and that SHPS was appointed solely as the agent of Park Place, and not as a fiduciary or administrator of the Plan.[1]

Plaintiff retired from his position as a security guard at Bally's, Inc. (a Park Place subsidiary), and he elected to continue his health coverage. On April 11, 1999, Plaintiff completed a Notice/Election of Healthcare Coverage Continuation form, based on which SHPS enrolled Plaintiff with the COBRA carrier. This COBRA coverage required payment of a monthly premium of $176.79 on the first day of each month, with a thirty day grace period for late payments. On or about December 10, 1999, SHPS received a personal check from Betty Austin in the amount of $176.79 as payment for Plaintiff's COBRA coverage premium for the month of December. SHPS deposited the check, and then forwarded the COBRA carrier, Sierra Healthcare Options ("Sierra Healthcare") an eligibility report showing Plaintiff as paid through December 31, 1999. However, the check was mistakenly routed to the wrong bank and subsequently returned for insufficient funds.

SHPS notified Plaintiff by letter dated December 27, 1999 of the insufficient funds notice. SHPS also forwarded a new eligibility report to Sierra Healthcare for January 2000 that

---

[1] Plaintiff concedes that SHPS was the agent of Park Place, not a fiduciary or a plan administrator.

showed Plaintiff as paid only through November 30, 1999. Plaintiff claims that he immediately called SHPS upon receipt of the letter and requested that they resubmit the check, because his account contained sufficient funds to cover the draft. Plaintiff also claims that an SHPS representative told him that SHPS could not locate the check but assured him that the coverage was still in force at the time of his call. On January 5, 2000, Plaintiff had a bone scan at the Memphis Radiological Clinic. At the time, the clinic could not confirm insurance coverage, and Plaintiff was later denied coverage for this procedure. On January 17, 2000, SHPS received and deposited a premium check for Plaintiff's COBRA coverage, presumably for December 1999.

On January 24, 25, and 26, 2000, Betty Austin and Plaintiff contacted SHPS and advised that the insufficient funds designation for the December check was the result of a banking error. SHPS then reinstated coverage for Plaintiff. On January 28 or January 31, 2000,[2] SHPS received and deposited overnighted payment of premiums from Plaintiff and contacted the new administrator, COBRA Serv,[3] to confirm that the account would be transferred showing an "active" status. On January 31, 2000, SHPS received confirmation from both COBRA Serv and Sierra Healthcare that Plaintiff was shown as being paid through January 31, 2000. On February 2, 2000, SHPS faxed an updated eligibility report to Sierra Healthcare showing Plaintiff as being paid through January 31, 2000. In February 2000, COBRA Serv advised Plaintiff that his healthcare eligibility had lapsed.

Plaintiff filed a complaint in state court on January 4, 2005, seeking compensatory and punitive damages for fraud and breach of contract. SHPS removed the action to this Court based

---

[2] The parties disagree on the date SHPS received the premiums, although the date is immaterial to the resolution of this motion.

[3] Effective February 2, 2000, COBRA Serv became the COBRA Administrator for the Plan.

3

on federal question of jurisdiction.

II.

The Court has jurisdiction over this matter under 28 U.S.C § 1441(b). *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for [the non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although a few facts are disputed here, they need not be resolved in order for the Court to decide as a matter of law whether Plaintiff's claims for fraud and breach of contract are preempted under ERISA.

III.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court has

stated that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97 (1983). Both the Supreme Court and the Sixth Circuit have emphasized the broad scope of ERISA's preemption provision. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (recognizing that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA"). Because of the somewhat vague nature of the phrase "relates to," courts, including those in this Circuit, have struggled to establish generally applicable rules for establishing which state laws "relate to" or have a "connection with" an employee benefits plan. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (Hereinafter "*PONI*"). In determining whether a claim "relates to" an employee benefits plan, the Court considers the kind of relief that plaintiffs seek, and its relation to the plan. *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

The Supreme Court recently provided additional guidance on the breadth of ERISA preemption in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), where it unanimously held that ERISA preempted plaintiffs' tort claims against the administrators of their respective employers' healthcare plans. The Court stated that the "preemptive force" of ERISA was not "limited to the situation in which a state cause of action precisely duplicates a cause of action under ERISA § 502(a)." *Id.* at 216. Rather, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 209. Applying this standard, the Supreme Court found that the plaintiffs brought suit only to "rectify a wrongful

5

denial of benefits promised under ERISA-regulated plans, and [did] not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 214. In *PONI*, the Sixth Circuit established that ERISA preempts state laws that "(1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." 399 F.3d at 698 (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). The Sixth Circuit applied both *Davila* and *PONI* in *Briscoe v. Fine*, 444 F.3d 487 (6th Cir. 2006), noting that although *PONI* did not cite *Davila*, "other circuits . . . have read the expansive language in *Davila* as holding that when a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." *Briscoe*, 444 F.3d at 498 (internal quotation and citations omitted).

In *Briscoe*, the court held that all of the plaintiffs' state-law claims against the third-party administrator of their employer's benefit plan were preempted, noting that the "fraudulent conduct alleged by the plaintiffs . . . is tied directly to the nature and existence of the Company's healthcare plan." That is exactly the case here, because Plaintiff's claims arise entirely from potential mistakes, inadvertent or otherwise, by SHPS in the administration of the Plan.[4] His claims therefore fall into the second of the *PONI* categories, as they are alternative means by which Plaintiff seeks to receive benefits under the Plan. *See Briscoe*, 444 F.3d at 499-500. Plaintiff may not evade ERISA's expansive preemption by "merely attach[ing] new, state-law

---

[4] The Court notes, however, that the evidence of any significant wrong committed by SHPS following the return of Plaintiff's check for insufficient funds appears minimal.

6

claims to the ERISA claims for breach of fiduciary duty and recovery benefits, for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA." *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999). *See also Briscoe*, 444 F.3d 478 (employee's fraud and misrepresentation claims against third-party administrator preempted); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (employee's breach of contract claim preempted); *Carpenters Health and Welfare Trust Fund for California v. Tri Capital Corp.*, 25 F.3d 849 (9th Cir. 1994) (breach of contract claim by alleged third party beneficiary preempted).

That SHPS may be a nonfiduciary of the Plan does not save Plaintiff's claims against it from preemption. In *PONI*, the court stated that "state law claims [which go] to the very heart of issues within the scope of ERISA's exclusive regulation . . . [are] clearly preempted." 399 F.3d at 702, n5 (citing *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin, Inc.*, 195 F.3d 803, 808 (6th Cir. 1999), in which employee's misrepresentation claim was held preempted by ERISA). Further, the court noted, "[t]his principle holds true even where the suit is brought against a non-fiduciary." *Id.* (citing *Provident Bank*, 170 F.3d at 615). *See also Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 418 (4th Cir. 1993) (employee's suit against administrator and underwriter for denied medical benefits was preempted); *Gibson v. Prudential Life Ins. Co.,* 915 F.2d 414, 417 (9th Cir. 1990) (employee's suit against agent for denied disability benefits was preempted); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1565 (11th Cir. 1987) (employee's claim against plan administrator for denied benefits is preempted). Here, Plaintiff is merely relabeling his ERISA claims for an alleged error in the administration of his benefits as breach of contract and fraud claims. He seeks benefits he was denied as a result of an alleged error and other misconduct by SHPS, in addition to other damages. Plaintiff has not pointed to "any violation of

7

a legal duty independent of ERISA." *Davila*, 542 U.S. at 214.  Any duty that SHPS owed to Plaintiff arose out of the "existence and nature of the plan itself." *Briscoe*, 444 F.3d at 499.  As he is merely attempting to bring his current claims as an alternative means of recovering benefits he claims he was entitled to under the Plan, those claims are preempted.  Further, because Plaintiff has not alleged and in fact has affirmatively rejected any potential ERISA claims against SHPS, the Court will dismiss the case in its entirety.

The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record